[No. 13115.  *En Banc.*  May 1, 1917.]

## B. J. Lyons *et al.*, *Respondents*, v. Ralph Ingle *et al.*, *Appellants.*[1]

Waters and Water Courses — Private Ditch — Prescriptive Rights—Easements—License to Use.  Where, under an agreement with an adjoining landowner, plaintiff was allowed to dig a ditch on the adjoining land and conduct water to his premises for irrigation, and for twenty years kept it in repair, the two owners using the ditch jointly, the evidence justifies a finding of an easement and prescriptive right to one-half the water in the ditch (overruling on rehearing *Id.*, 91 Wash. 179).

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered May 25, 1915, upon findings in favor of the plaintiffs, in an action in equity, tried to the court.  Modified.

*H. N. Martin* and *Merritt, Jesseph & Merritt*, for appellants.

*W. E. Southard*, for respondents.

### On Rehearing.

Fullerton, J.—This cause is before us on the grant of a rehearing upon the departmental decision reported in 91 Wash. 179, 157 Pac. 460, wherein the decree of the superior court quieting title in respondents to a certain ditch and water right on appellants' land was reversed.  The evidence as given by the parties to the action was flatly contradictory and far from satisfactory and convincing on any theory; but as the effect of our former decision was to deprive the respondents of the use of water which they had enjoyed for over twenty years, the cause was assigned for a second argument before the court sitting *En Banc.*

A brief summary of the facts in the case is here given in order to make clear the situation of the parties.  In the year 1889, Lester Popple, the father of the appellants Mrs. Ingle

[1]Reported in 164 Pac. 745.

and Mrs. Jenks, settled upon certain land in Lincoln county, through which ran a stream known as Crab creek. Within the confines of Popple's land, this creek branched into three channels, afterwards reuniting again in one main channel. From the south channel, Popple led a ditch to a large pond or pool, which was thus kept supplied with water for his stock, and from which he occasionally took water for irrigating small tracts. In 1891, respondents acquired land west of Popple's, a portion of which they irrigated for a couple of years from what appears to have been overflow waters escaping from Crab creek during periods of high stage and reaching their land by means of natural depressions in the soil.

In the latter part of 1892, respondent B. J. Lyons entered into an agreement with Popple whereby the former was allowed to tap the pond on Popple's farm and lead water therefrom by a ditch to a seven-acre orchard tract belonging to Popple, and from there on down to respondents' land, where the water could be used for irrigating some thirty acres. It does not appear whether this was originally a mere permissive use of a ditch and water right or the grant of an easement. This ditch was constructed by Lyons and used by him and Popple jointly for about eleven years. In the year 1904, it was necessary to shift a part of the ditch farther north by reason of the location of a public road through Popple's land, which location partially covered the existing ditch. The necessary work of reconstructing the ditch was done by Popple. The joint user of the ditch by Lyons and Popple continued thereafter without any friction until the latter's death in July, 1913. For a period of twenty years Lyons had looked after the cleaning and repair of this ditch, employing thereon annually the labor of two men, usually from two to five days. He had also on occasions cleaned the ditch constructed by Popple which tapped the waters of Crab creek. The waters of this creek at the place of intake were two and one-half feet in depth. The ditch built by Lyons and afterwards partially relocated by Popple was some thirty inches in width, with a

usual depth of one foot of water, running at the rate of two
feet per second of time. This amount of water was subject,
however, to fluctuations due to the stage of water in the Crab
creek source of supply. The ordinary volume of water carried
in the ditch was practically all necessary for the irrigation
of respondents' thirty acres and appellants' seven acres. In
the year 1915, the appellants, as the successors of Popple,
denied Lyons any greater water right than the use of such
surplus as might remain after they had distributed what
water they needed upon their land. At the same time, the
appellants were proposing to take water from the ditch for
the purpose of irrigating twenty-five acres that had not there-
tofore been irrigated. As this would practically deprive the
respondents of water, they brought suit to quiet title to the
ditch and water right and to restrain interference therewith.
The action included not only .the ditch as constructed by
Lyons and reconstructed by Popple, but also the Popple ditch
between the creek and the pond.

The evidence introduced at the trial to establish the rights
of the parties, we may repeat, is most unsatisfactory, al-
though it is possible that nothing more definite can be pro-
duced. A more careful perusal of it has convinced us, how-
ever, that we were in error in our former opinion in holding
that the respondents' right to the use of water from the ditch
was merely permissive. We think the evidence justifies the
conclusion that Popple, not only by his acts but by his dec-
larations, recognized a right in the respondents to some pro-
portion of the water, and that this, together with the long
continued use of the water by the respondents, justified the
trial court in finding that they were entitled as of right to a
proportion thereof.

But we think the court was in error in dividing the water
on the basis of 7-37 to the appellants and 30-37 to the re-
spondents. There is evidence that Popple at times irrigated
a larger tract of land than the seven-acre tract, not only

from what may be called the joint ditch, but from the ditch leading from the source of supply to the pond mentioned; and this without dispute as to his right by the respondents. Indeed, it seems to us that this area equals, if it does not exceed, the area irrigated by the respondents. While Popple's use of the water for the larger area was intermittent and may not have seriously interfered with the quantity of water required by the respondents, it tends to refute the finding of the trial court that the respondents had acquired the right to so large a proportion of the water. It must be remembered that Popple was the original appropriator of the water, that his land supports the ditches in which the water is carried, and that there is on his land a much larger area capable of irrigation than the seven acres he planted to an orchard. In view of these facts, we think it not reasonable to suppose that he intended to surrender all of his acquired rights save such as might be sufficient to irrigate the seven-acre orchard tract.

For want of a more definite basis for a division, therefore, we believe it would be more in consonance with the rights of parties and with the equities of the case to divide the water equally between them, than to award the whole to one of the parties, or to divide it on the basis of division employed by the trial court.

Our former order will be modified, and the cause remanded to the trial court with instruction to award to each of the parties an equal division of the water, with such right to maintain the ditches as may be necessary to insure the permanence of the water supply.

ALL CONCUR.